Good morning. May it please the Court. My name is Neil Sedergren, and I represent the appellants, Continental Cement Company and Summit Materials, in this appeal. This appeal concerns whether a maritime insurer that agreed to cover an 86-year-old river barge known as the Mark Twain that moved cement between Hannibal and St. Louis may void the policy after the barge sank pursuant to ubermae fidei, an antiquated doctrine that is contrary to Missouri law. Isn't that the key issue of whether Missouri law or some other kind of law applies? It's our position that Missouri law applies, and if Missouri law applies, the policy may not be voided because the insurer did not plead or prove fraudulent intent. And what's your best argument that Missouri law should apply? It's based on Wilburn Boat, the Supreme Court's decision in 1955, which held that state law applied to marine insurance unless there was an established federal maritime rule on point. And in 1991, the Fifth Circuit Court of Appeals, the leading circuit for admiralty law on the inland rivers, decided the Albany insurance case, which was cited in the briefs extensively, and rejected the very same arguments advanced by the insurers here. The Fifth Circuit judges, including noted admiralty jurist Patrick Higginbotham, relied on two Supreme Court cases, Wilburn Boat and Cossack, which discussed the interplay between state law and federal law. Citing Wilburn Boat, the Fifth Circuit in Albany Insurance described the application of state law to marine insurance as both a presumption and that it is axiomatic. This court has twice cited Wilburn Boat and both times applied state law to resolve marine insurance disputes. The Cargill case from 1989 and the Black and Veatch case from 2004 both cited in the briefs. What about the circuit split on this issue? Aren't there several other circuits that have a different approach? There are different circuits who have disagreed with the Fifth Circuit. The First Circuit has held that it's debatable whether Hubert May Faday can still be deemed an entrenched rule of law. Other circuits, the Second, Third, and the Ninth, have held that Hubert May Faday is still an entrenched maritime law. I don't think those other circuits' decisions, though, are persuasive because they do not follow or even address the Supreme Court's ruling in Cossack, which occurred six years after Wilburn Boat, which held that this process of determining the federalism issue between state and federal law must involve a process of accommodation. The Supreme Court in 1961's Cossack decision referred repeatedly, three or four times, to this process of accommodation. Relying on Cossack and Wilburn Boat, the Fifth Circuit identified three factors that courts should go about applying in considering this federalism issue. The three factors are, is there a federal entrenched maritime rule, is there a substantial state interest, and is the state law inconsistent with the core principle of admiralty law, or is it reasonably similar? In Wilburn Boat, the Supreme Court set a very high standard for what constituted an entrenched federal maritime rule, and Hubert May Faday does not meet that standard. Justice Black concluded Wilburn Boat by stating that the court, like Congress, quote, leave the regulation of marine insurance where it has been, with the states. In Wilburn Boat, the court was considering whether the literal compliance rule was an established maritime rule that trumped state law and permitted the insurer to void a policy. The policy had been issued stating the insurer is just going to use it for private, you know, pleasure use, but he was using it for commercial use as a ferry. And in concluding that state law applied, not maritime law, the Supreme Court held that the literal compliance rule was harsh and it has not been treated as an admiralty rule, but as a general warranty rule applicable to many types of contracts, including marine, but also other insurance. And the exact same thing is true here. Hubert May Faday arose out of insurance law generally. It did not arise out of admiralty law. The last time the Supreme Court talked about Hubert May Faday. I can ask a question here. Doesn't it make sense, though, to put the burden on the insured in a situation of maritime law where the boats are moving around the country or perhaps overseas all the time? It's difficult and expensive for the insurance company to go and actually do a physical survey, and sometimes impossible if it's on a long voyage somewhere. Isn't that sort of the roots of this doctrine? The roots of the doctrine, certainly. But the modern-day application demonstrates that this rationale that you've offered is outdated. It expired decades ago, and that was the reason the Fifth Circuit put it in the graveyard in 1991. And it's especially true concerning river barges on the country's inland rivers. The Stecker case, which we cited in our briefs, explains that Hubert May Faday was developed when sailing ships in faraway seas were insured in London by underwriters who could get no information about the ship owners. But that's just not the case anymore. Modern marine insurers, including those who insure risks in Missouri's river industry, do not warrant the extraordinary protection of this doctrine anymore. The instant facts illustrate why. The barge was docked in St. Louis Harbor and readily accessible for the insurer to inspect throughout the application period and the entire period of the policy. You can't really look at it on a case-by-case basis, I don't think. I think you've got to look at the general proposition, right? Star's underwriting guidelines call for obtaining condition and valuation surveys on any vessels that are more than 15 years old. If they were really relying on their insurers to volunteer all the relevant information without even being asked for it, which is what Hubert May Faday contemplates, there'd be no need for underwriting guidelines or even insurance applications at all because the doctrine presupposes that the insured has to give them everything that's relevant. Modern marine insurers, like Star here, they rely on their own application and underwriting process, not the initiative of prospective insurers to find out the information they think is important about whether or not they're going to insure the risk. The insurance companies and their underwriters are the experts about what information they want to consider to analyze the risk, not the insurers. Continental's own submission here for insurance stated that this is an 86-year-old barge and complete surveys are due again. Continental's insurance broker urged the insurer to have new surveys performed soon, and they agreed to do it forthwith. Despite this company's underwriting guidelines, the application's content, and the broker's urging, the underwriter decided not to have condition and valuation surveys performed on the barges. I don't believe contemporary law should permit marine insurers to void policies after a loss based on Hubert May Faday. Missouri law already provides adequate protections for insurers who get fraudulently or intentionally misled by policyholders. Marine insurance companies should be held to the same standards. I just wanted to ask about when these issues were before Judge Ross, was there a full discussion of these issues at the time? Yes, these issues were briefed prior to trial, and the court's opinion concluded that Hubert May Faday was entrenched federal precedent, notwithstanding the Fifth Circuit's opinion, but the district court did not go on to discuss either the second or the third factors of the test laid out by the Fifth Circuit after the Cossack opinion. The district court cited the three factors that we've talked about, but nowhere does it discuss the second or the third factors. The second factor, of course, is a substantial state interest, and here there's no real dispute that Missouri has a substantial interest in the application of its law here. The insurers do not contend otherwise in their brief. The insurance coverage is for a cement company headquartered in Missouri that moves cement that it manufactured in Hannibal, Missouri, down the Mississippi River to St. Louis, Missouri. The policy was delivered to my client in Missouri. The barge sank in Missouri. There are no international or even interstate issues here. This is really a localized insurance dispute, which is exactly the same thing that occurred in Albany Insurance. The Fifth Circuit there held that Texas had a material interest in ensuring that marine insurance underwriters do not invalidate the insurance protection that Texas citizens purchase based on an innocent misrepresentation. The same is true here, although the insurers lack any misrepresentation in the application. In Albany Insurance, that point was conceded, that there was some innocent misrepresentations. Here, the insurers claim only an omission of a document that we don't believe the application clearly asked for in the first place. There's no place in the application that they're going to come and point to you and say, they lied, they answered this question untruthfully. The application states only, please provide recent surveys, whatever recent means, and we know what surveys means from the preceding sentence. In Exhibit CC3, the application, this preceding sentence says, the quotes are subject to satisfactory condition and valuation surveys. This document that they say we didn't give them is not a condition and valuation survey. The person who wrote it, who testified for Starr, Wade McGrady, agrees it's not a valuation survey. It has nothing to do with valuation, not in there at all. So if we interpret insurance policies and their application against the insurer, I don't think this document was called for in the first place. With respect to the third and the final factor, it's whether state law has a reasonable similarity to maritime law. In other words, is the state law inconsistent with a core principle of maritime law? And in Albany insurance, Texas law required the insurer to prove an intent to deceive the insurance company, just like Missouri law here. The Fifth Circuit concluded that Texas's higher standard of proof to void a policy was not harmful to federal maritime law. Missouri law, like Texas law, already had a law in place to protect insurance companies from fraud. Voiding insurance policies based on innocent omissions is simply not a core principle of maritime law that's going to hurt. Each of these three factors supports the application of Missouri law in this instance. I will see I'm over my time, so I will reserve the remainder for rebuttal. Very well. Good morning. You may proceed. May it please the Court. My name is Jim Mondal on behalf of Starr Marine and New York Marine General Insurance Companies. This case was a one-and-a-half-week trial over an insurance coverage issue. The cement company wanted a jury trial. They received the jury trial. They requested a general verdict, which the judge submitted to the jury, and the jury reached the right result, voiding the insurance policy for at least one and probably two reasons, both the breach of the warranty of seaworthiness at the inception of the insurance policy, that is that the barge was not seaworthy when the policy was issued, and that was essentially uncontroverted and is certainly not being appealed, and that the cement company, the barge owner, failed to provide Continental, Starr, with a 2008 survey, a rather critical piece of information regarding the barge. The premise of the entire appeal is that there is an ambiguity in that general verdict form, and there are a couple of doctrines that preclude getting into any of the issues, the substantive issues that Continental is raising. Number one, this issue has been waived. They requested a general verdict form. Starr Insurance Company submitted to the court, tendered, special interrogatories for the jury that would have explained what they found as far as voiding the policy, whether they breached the warranty or violated their duty of utmost good faith. Continental wanted a general verdict form. But as we sit here, we don't know whether the jury found lack of seaworthiness or not. Do you have any cases that say where they insist on a general verdict we can presume that? Judge, the courts have applied this in slightly different contexts, including in the Eighth Circuit. There's the Hartz case where there were parts of the verdict form that were special interrogatories and parts, the damages aspect in particular, was a general verdict. And the court said in that case that the damages aspect, because we don't know what issue of liability the damages were awarded to, that they were going to uphold that award of damages because the appellant did not object to the general verdict aspect of that damage allocation. Now, I will acknowledge, Judge, that two issues. Number one, that this court and others have been hesitant to consistently enforce this waiver rule. In the Brunswick case. If we could tell for sure that the jury found on both, then it might be easy. And there is some appeal to your argument that maybe they should pay the price since they insisted on a general verdict. That's right. But I haven't seen any cases that say we can do that. Judge, there is the doctrine of waiver that with a general verdict form, and Judge Murphy referred to this in the Concord v. Brunswick case, that as a general rule, a party needs to object to a general verdict form if they're going to claim ambiguity. The reason that we don't know what the jury did is because they requested and received a general verdict form. If ever there was a case for applying or enforcing the waiver rule with regard to general verdicts, this is it. They requested the general verdict form. Over our request for special interrogatories, the judge gives the general verdict form they request, and then they come into the court here and say we don't know what the jury did because of the inherently ambiguous verdict form that they requested and received. If there's some concern about finding consistency in that waiver issue, Continental Cement has made it easier for us. Because even if we're going to get past the ambiguity and concede that we don't know what the jury did and we're not going to hold Continental responsible for that, the fact is that they have not preserved this issue of application of maritime law. Judge, you asked a poignant question. Was this issue discussed in the trial court? The answer is no. They raised this once and only once in a motion for summary judgment. And if any rule in this court is clear, it's that denials of summary judgment are not reviewable on appeal. Judge Grinder, in your EEOC v. Southwestern Bell case, made abundantly clear summary judgment denials are not reviewable on appeal after trial on the merits. They've argued that we should look beyond that involved a purely legal issue. The Eighth Circuit has rejected that dichotomy decades ago. Perhaps erroneously. We're stuck with it, put it that way. But I think I find a lot of appeal in what the opposing counsel says. Well, I agree that you are stuck with it, but I would also characterize this as a sensible rule. But how does somebody preserve that error, that error of law? Judge, I don't think few rules are more clear than raising at trial the law that you want the judge to apply at trial. It's a sensible rule, and it's pretty fundamental. Having been told you're not going to be allowed to bring that issue as a result of the denial on the summary judgment, why would you raise it again? Well, I don't think that's what the judge said. What the judge said is he was not granting summary judgment. There were issues of fact as well as issues of law involved in his summary judgment ruling. This court has pointed out that trying to distinguish between these denials based on factual issues and purely legal issues would involve what you've characterized as a dubious undertaking of determining the basis on which summary judgment is denied and whether those bases are legal or factual. And benefiting only those movements for summary judgment who fail to follow the federal rules of civil procedure. One of which is- Maybe I was mistaken. I thought that the summary judgment at least in part went to whether the utmost good faith would be part of the case. That's not- well, I don't read the order that way. What the judge said was that he found the doctrine to be an established and entrenched maritime rule, and he's right about that. But he didn't describe what was going to be taken up at trial. And if Continental wanted to have the judge apply maritime law, it may have been a futile gesture, but it certainly was a required one. No different than a motion in limine. If they want the judge to apply maritime law in the judgment for a matter of law or during the jury instructions, the very least they should do, must do, is cite the law that they want the judge to apply. But having cited it to the judge and the judge rejected it, what more needed to be done? They didn't cite it during trial. What needed to be done was for the judge- At what point did they request this application of this law? At the summary judgment stage. And just two years ago in Lopez, this court reiterated the rule in the Eighth Circuit, quote, a denial of summary judgment is not appealable after a final judgment regardless of whether the issue is factual or purely legal, end quote. The rule doesn't become any more clear than that. And what did we cite for that proposition? Well, I think you cited, among others, the Metropolitan Life Insurance case versus Golden Triangle, which was another Eighth Circuit case going back to 1997. Which may have been wrongly decided, but we're bound by it, at least for the moment. And this issue appeared to have, in any event, have been abandoned at trial, because when they move for judgment as a matter of law, which is apparently what they are appealing, or at least under the Eighth Circuit law the only thing they can appeal, they never once mentioned Missouri law. The entire argument was premised on the conclusion that maritime law applied. Even they seem to acknowledge that, because when they argued to Judge Ross that the evidence did not support the submission of this issue to the jury, the utmost good faith or obey or make of the day doctrine, Mr. Sedergren argued that we didn't have any authority voiding a marine insurance policy. He didn't say insurance policies generally, he said a marine insurance policy, based on a simple mistake. We provided the court with the Azalea Fleeting case, which held exactly that, involved virtually identical facts, and the court, after a bench trial, voided the insurance policy because the boat owner failed to provide the insurance company with a survey. And in response to that, Mr. Sedergren did not argue that that was the incorrect law, or provide the judge with Missouri law, or provide the judge with any law whatsoever. Rule 50 requires, as part of the Federal Rules of Civil Procedure, that a party moving for judgment as a matter of law must specify the law and the facts that entitle the movement to the judgment. They cited facts, which the judge rightly rejected, but they cited no law whatsoever. In Linden, didn't we say that that was generally the waiver for failing to file the Rule 50 motion was limited to sufficiency of the evidence, not a legal determination? Judge, I believe that involved Rule 59, which would be the post-trial motion. I think with a Rule 50 motion, if you are going to argue that the judge should have applied some different law, that you need to cite the law to the judge, the Rule 59, the post-trial motion, which they also failed to file, is, well, let me take this chronologically. The Supreme Court in Unitherm said you must file a post-trial motion if you want any issue to be heard by the appellate court at trial. This court has excused some of those when there are purely legal issues that are raised at trial. They didn't raise any purely legal issue, and in fact, Judge, in the EEOC versus Southwestern Bell case that you wrote a few years back, you distinguished or rejected these arguments that these mixed questions of law and fact, like they were raising, like they are raising, that the evidence doesn't, that this is an innocent mistake, that those are purely legal questions. These are mixed questions of law and fact, and if they want to raise the issues that they did raise in their motion for summary judgment, excuse me, in their judgment for a matter of law, if they want to raise those here, they must file a post-trial motion, which they neglected to do. Before I run out of time, I would like to talk about the Huberme-Fadde doctrine. Even if all of these issues were preserved, and I don't think any of them are, the Huberme-Fadde doctrine is a sensible doctrine, not only because of the, as Judge, you pointed out, that in this case, we are dealing with a barge, but in many cases, we're dealing with barges that are moving up and down the river, in the Gulf, we have ships going in the ocean, and in any event, we didn't know where this barge is. They say, well, it was sitting in St. Louis Harbor. We didn't know that. This barge travels, and their barges travel throughout the United States. As it sits right now, it's both in Missouri state waters and in the concurrent jurisdiction of the state of Illinois. And the Fifth Circuit is alone in finding that this rule shouldn't apply universally to insurance companies. Somebody should bear the burden of failing to provide this information to the insurance company, and most courts, the Second, the Third, the Ninth, the Eleventh, and district courts by the dozen throughout the country, in every circuit except the Fifth now, have rejected the Fifth Circuit's approach, and now Judge Ross rightly concluded that it should apply in the Eastern District of Missouri as well, and he was right. I should turn briefly to the instructions argument that they raise. As with the judgment as a matter of law issue, they claim that the judge should have applied state law in the jury instruction. They never once in that mentioned Missouri law or the phrase state law, and as with Rule 50, if they want to object to the form of the instruction, they need to raise that to bring that to the trial court's attention so that he can at least consider the issue. Well, I think the bigger problem with the instruction is it seems to assume that the 2008 survey was material. Judge, I would disagree with that characterization. I believe the 2008, excuse me, the instruction states in the first paragraph, it describes the utmost good faith doctrine and uses the word material twice in describing for the jury what the utmost good faith doctrine requires, and it requires the policy be voided if a misrepresentation was material, and in the second paragraph, and it points out that we, SAR has a burden of proof on that issue, in the second paragraph, it says that they must find for Star if Continental violated its duty of utmost good faith by failing to provide that. Continental reads out of this second paragraph the words violated its duty of utmost good faith by. They assume that it says you must find for Star if you find that Continental failed to provide Star with the survey. That's not what the instruction says. It doesn't say that they have to find for us if they didn't provide the survey. It says they must find for us if they find that Continental violated its duty of utmost good faith by failing to give us the survey. Thank you. Mr. Suttergood? I wanted to start with a question Judge Murphy had asked me about these other circuits, and I wanted to point out just real quickly that the cases from the other circuits really only discuss this entrenchment issue. They don't discuss COSIC or the legitimate state interests, and many of the cases arose at a time and a location where the choice of law issue did not affect the outcome at all. Two quick examples. The insurers cite New Hampshire Insurance Company, a Ninth Circuit case from 2008 at page 42 of their brief. That decision specifically notes that California law and maritime law are exactly the same, so the choice of law was meaningless. The very next case the insurers cite, HIH Marine from the Eleventh Circuit, says the same thing. The issue was academic because state law and maritime law were the same. Here, the choice of law is dispositive of the entire defense, just like in Albany Insurance. If Missouri law applies, the policy is not void. If a life insurer is interested in whether you smoke or not, they seek information about it. They don't get to take your premiums and then later claim the policy is void if the applicant didn't volunteer that they were a smoker. If the insurer here was interested in the condition of the hull or the bilge system on an 86-year-old barge, they should have asked questions about it like they did on so many other topics. They asked 11 follow-up questions. It's in Exhibit 6. And they admit that all of those answers were answered accurately. Now, with respect to the jury instruction, the verdict-directing portion of the instruction, as you've indicated, Judge Gruender, is that the district court merely defined materiality at the beginning of the instruction but then erred by not including this key element in the subsequent verdict-directing portion, which permitted the jury to assume that the court- Didn't that make it an uphill battle for you? Well, we did object to instruction number 8, but the failure to include an element in the verdict-directing instruction is plein air. Well, materiality is mentioned. Not in the verdict-directing portion. Well, it's mentioned in instruction 8. It was defined early in instruction 8, but the verdict director just says your verdict must be for Star if you find that Continental violated its duty of utmost good faith by failing to provide Star with the 08 survey or its contents, in which case you must find the policies are void. In the verdict-directing portion, saying this is what you must find, the court never mentions materiality, which everyone agrees is a key element. And you objected on that basis to the verdict director? We objected to instruction 8 and- On that basis? Incorporated our arguments from the judgment as a matter of law, saying this- should not be submitted to the jury. Judge Grinder, finally, with respect to the point you raised earlier about the cost of these surveys, if you look at Exhibit CC3, which is on page 8 of the exhibit binder, Star specifically says that quotes are subject to satisfactory condition and value surveys, usually at the expense of the applicant insured. In other words, this concern they're raising about how it's going to cost them so much money to do these surveys, they already pass along to the applicant or the insured anyway. Let me ask you, why should you benefit from your insistence on a general verdict? My insistence on a general verdict was based on that is the verdict form that is approved by Missouri law. This is a pure Missouri law verdict form that's required for bad faith situations. I was in diversity. I was suing under Missouri law. I submitted Missouri jury instructions. I submitted Missouri law in my trial brief, and I submitted the appropriate Missouri general verdict form. And the Supreme Court has cases that are replete that that is not a basis to take a verdict- to affirm a verdict if one count is improperly submitted. The Halecki case is particularly on point. It involved a negligence and an unseaworthiness count. Plaintiff got a verdict. We don't know which of the claims the verdict was based on. On appeal, the Supreme Court says one of them's wrong, one of them was okay, and they argue, well, you should just affirm it assuming the jury found it on the appropriate one. And the Supreme Court said you can't do that. It might have been based on the improper claim, and that law requires a new trial. Well, and my point is if you had asked for or allowed the specific questions, we'd know which ones the jury found on. But I don't believe that's a reason under the law, under the Supreme Court and Eighth Circuit precedent, to give that away.  Thank you, Your Honor. All right, well, the case is submitted, and we will take it under consideration. Thank you.